IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **GELITA G. RIOS,**[1] | * |
| | * |
| **Plaintiff,** | * |
| | *    **Civil No. TMD 15-1029** |
| v. | * |
| | * |
| | * |
| **CAROLYN W. COLVIN,** | * |
| **Acting Commissioner of Social Security,** | * |
| | * |
| **Defendant.** | * |
| | *********** |

**MEMORANDUM OPINION GRANTING DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff Gelita (or Geltia) Rios seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 21) and Defendant's Motion for Summary Judgment (ECF No. 22).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Defendant's Motion

---

[1] Although Plaintiff's name appears on the docket and in her Motion for Summary Judgment as "Gelita G. Rios," her name in her complaint (ECF No. 1) and throughout the administrative transcript (ECF No. 14) appears as "Geltia G. Rios."

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

for Summary Judgment (ECF No. 22) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 21) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

I

**Background**

Plaintiff was born in 1960, has a ninth-grade education, and previously worked as a certified nursing assistant. R. at 110-11, 304. Plaintiff protectively filed applications for DIB and SSI on April 21, 2011, alleging disability beginning on March 1, 2009, due to stroke, a broken foot, major depressive disorder, and anxiety. R. at 285-95, 304, 308. The Commissioner denied Plaintiff's applications initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 155-215. On May 9, 2013, ALJ Melvin G. Olmscheid held a hearing in Baltimore, Maryland, at which Plaintiff and a vocational expert ("VE") testified. R. at 101-54. On August 6, 2013, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of March 1, 2009, through the date of the decision. R. at 84-100. Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on February 12, 2015. R. at 1-6, 79-83, 376-80. The ALJ's decision thus became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On April 10, 2015, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case subsequently was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

II

**Summary of Evidence**

**A.     Opinion Evidence**

On July 12, 2011, a state agency medical consultant, A.R. Totoonchie, M.D., assessed Plaintiff's physical residual functional capacity ("RFC"). R. at 160-61, 170-71. Dr. Totoonchie opined that Plaintiff could (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 160, 170. In assessing Plaintiff's exertional limitations, Dr. Totoonchie considered her history of asthma; low back pain radiating to both buttocks; X-rays of her lumbar spine on March 9, 2011, showing minimal degenerative osteoarthritis at L3-L4 and L4-L5; and complaints of swelling in both legs on April 28, 2011. R. at 160, 170. Plaintiff had no postural, manipulative, visual, or communicative limitations, but she was to avoid even moderate exposure to fumes, odors, dust, gases, poor ventilation, etc., because of her history of asthma. R. at 160-61, 170-71.

On July 23, 2011, Kevin Budney, Psy.D., conducted a consultative psychological evaluation of Plaintiff that included a mental status examination and a battery of psychological tests. R. at 446-54. Dr. Budney's diagnoses included adjustment disorder with mixed anxiety and chronic depression and a GAF score of 65.[3] R. at 451. Plaintiff "reported life stressors

---

[3] The GAF, or global assessment of functioning, scale rates psychological, social, and occupational functioning; it is divided into ten ranges of functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000). A GAF rating between 61 and 70 indicates that the individual has "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) [or] some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but [is] generally functioning pretty well [and] has some meaningful interpersonal relationships." *Id.* at 34. The current edition of the manual eliminated the GAF scale for reasons including "its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and

causing her to feel depressed and stressed out. She has taken relatively lower dose of prescribed medications to treat these symptoms since 2007 with great success according to [Plaintiff]." R. at 451. Plaintiff demonstrated intact abstract reasoning and intact memory for recent and past events. R. at 454. She understood and could follow simple instructions independently. R. at 454.

On August 4, 2011, another state agency consultant, S. Boyer, using the psychiatric review technique ("PRT") under 20 C.F.R. §§ 404.1520a and 416.920a, evaluated Plaintiff's mental impairments under Listings 12.04 and 12.06 relating to affective disorders and anxiety-related disorders (R. at 158-59, 168-69). *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04, 12.06. The consultant opined that, under paragraph B of the applicable listings, Plaintiff's mental impairments caused her to experience (1) mild restriction in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) one or two episodes of decompensation of extended duration. R. at 159, 169. The consultant did not find evidence to establish the presence of the criteria under paragraph C of the applicable listings. R. at 159, 169. The consultant thus assessed Plaintiff's mental RFC (R. at 161-63, 171-73) and opined that she was moderately limited in her ability to (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and to (4) respond appropriately to changes in the work setting. R. at 162-63, 172-73. Plaintiff otherwise was not significantly limited. R. at 162-63, 172-73. In reaching an opinion about Plaintiff's mental RFC,

---

questionable psychometrics in routine practice." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013).

the consultant considered the findings and diagnoses from Dr. Budney's examination. R. at 163, 173.

On December 7, 2011, another state agency consultant, Nisha Singh, M.D., again assessed Plaintiff's physical RFC. R. at 183-85, 195-97. Dr. Singh opined that Plaintiff could (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 183-84, 195-96. In assessing Plaintiff's exertional limitations, Dr. Singh also considered her history of asthma; low back pain radiating to both buttocks; X-rays of her lumbar spine on March 9, 2011, showing minimal degenerative osteoarthritis at L3-L4 and L4-L5; and complaints of swelling in both legs on April 28, 2011. R. at 184, 196. Plaintiff had no postural, manipulative, visual, or communicative limitations, but she was to avoid even moderate exposure to fumes, odors, dust, gases, poor ventilation, etc., because of her history of asthma. R. at 184-85, 196-97.

On December 13, 2011, another state agency consultant, D. Walcutt, Ph.D., again used the PRT to evaluate Plaintiff's mental impairments under Listings 12.04 and 12.06. R. at 182-83, 194-95. Dr. Walcutt opined that, under paragraph B of the applicable listings, Plaintiff's mental impairments caused her to experience (1) mild restriction in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) one or two episodes of decompensation of extended duration. R. at 182, 194. Dr. Walcutt did not find evidence to establish the presence of the criteria under paragraph C of the applicable listings. R. at 182, 194. Dr. Walcutt thus assessed Plaintiff's mental RFC (R. at 185-87, 197-99) and opined that she was moderately limited in her ability to (1) understand, remember, and carry out detailed instructions; (2) maintain attention

and concentration for extended periods; (3) work in coordination with or in proximity to others without being distracted by them; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and to (5) respond appropriately to changes in the work setting.  R. at 185-86, 197-98.  Plaintiff otherwise was not significantly limited.  R. at 185-86, 197-98.  In reaching an opinion about Plaintiff's mental RFC, Dr. Walcutt also considered the findings and diagnoses from Dr. Budney's examination.  R. at 187, 199.

On December 18, 2012, Alisa Ingram, M.D., completed a "Medical Report Form 500" on which she noted that she had seen Plaintiff since November 21, 2012, and that Plaintiff presented symptoms of back, hip, and knee pain; depression; anxiety; obsessive-compulsive disorder; and phobias.  R. at 624.  Dr. Ingram opined that, in an eight-hour workday, Plaintiff could sit for one hour, stand for one hour, reach for one hour, and walk for one-half hour.  R. at 624.  According to Dr. Ingram, Plaintiff could never climb, bend, squat, or crawl.  R. at 624.  Plaintiff could lift and carry at most ten pounds.  R. at 624.  Dr. Ingram also opined that Plaintiff did not have an impairment or combination of impairments that interfered with her ability to function independently, appropriately, and effectively on a continuous basis.  R. at 625.  Plaintiff experienced mild limitation in daily living activities, mild limitation in maintaining social functioning, and moderate limitation in maintaining concentration.  R. at 625.  Dr. Ingram opined that Plaintiff would be limited to one hour of work per day.  R. at 625.

Plaintiff's treating psychiatrist, Byung Ahn, M.D., had been treating Plaintiff monthly since January 15, 2008.  R. at 603.  On December 28, 2012, Dr. Ahn opined that Plaintiff's major depressive disorder and panic disorder caused her difficulty in maintaining concentration and relating to the public and crowds.  R. at 603-04.  Dr. Ahn opined that Plaintiff's abilities to

follow work rules, to use judgment, and to function independently were good. R. at 606. Her abilities to deal with changes in a routine work setting and to respond appropriately to supervision, co-workers, and usual work situations were fair. R. at 606. Plaintiff's abilities to maintain attention and concentration and to deal with the public and with work stresses were poor. R. at 606. According to Dr. Ahn, Plaintiff's ability to understand, remember, and carry out simple instructions was good, but her ability to understand, remember, and carry detailed instructions was poor. R. at 607. Her ability to remember locations and work-like procedures was fair. R. at 607. Plaintiff's ability to make personal-social adjustments was good. R. at 607. On a PRT form, Dr. Ahn opined that, from January 2011 to December 28, 2012, Plaintiff's mental impairments caused her mild restriction in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no extended episodes of decompensation. R. at 610-23.

**B.  Hearing Testimony**

    **1.  Plaintiff's Testimony**

The ALJ summarized Plaintiff's testimony in his decision:

> [Plaintiff] testified that she is disabled primarily due to back pain and depression. She said she has a cane but does not use it much. She stated she is able to stand for 30 minutes and walk two city blocks. She said she is able to sit for 30 minutes before experiencing back pain. She stated she is able to lift or carry 10 pounds including a ½ gallon of milk. She indicated that her back pain averages 6 out of 10 on an average day. She said she uses an inhaler for asthma. [Plaintiff] testified that she is afraid of bugs and only goes to the store when there are no crowds. She said she often becomes jittery and had a panic attack the day before the hearing.

R. at 92; *see* R. at 110-24, 128-45.

### 2.     VE Testimony

The VE testified that a hypothetical individual with Plaintiff's same age, education, and work experience with the RFC outlined below in Part III could not perform Plaintiff's past relevant work but could perform the unskilled, light[4] jobs of garment sorter or assembler of small products.  R. at 146-48.  An individual with a ninth-grade education and limited to less than a sedentary work capacity and to working for one hour per day who would be unable to work with the public, to concentrate, to understand and carry detailed instructions, and to deal with work stresses would not be able to perform these jobs, however.  R. at 149-50.  A person's functioning at 80% or less compared to other individuals performing similar tasks would not be employable.  R. at 149.  A person absent from work more than one day per month would not be employable.  R. at 149.  The VE's testimony was consistent with the *Dictionary of Occupational Titles*.[5]  R. at 146.

## III

## Summary of ALJ's Decision

On August 6, 2013, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of March 1, 2009; and (2) had an

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  *Id.* §§ 404.1568(a), 416.968(a).

[5] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs."  *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1).  "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could perform other work in the national economy, such as a garment sorter/inspector or small-products assembler. R. at 89-96. The ALJ thus found that she was not disabled from March 1, 2009, through the date of the decision. R. at 96.

> In so finding, the ALJ found that Plaintiff had the RFC
>
> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the additional limitation that she can do work that occasionally requires balancing, stooping, kneeling, crouching, crawling, and climbing (except never requires the use of ladders, ropes and scaffolds). She needs to work in a well-ventilated area. Because of her mental impairments, she can perform jobs consisting of unskilled, routine, and repetitive tasks, with only occasional interaction with the public and coworkers.

R. at 91. The ALJ also considered Plaintiff's credibility and found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. at 93. The ALJ considered the opinion evidence and found:

> As for the opinion evidence, I give little weight [to] Dr. Ahn's opinion noting poor to no ability to deal with the public, deal with work stresses, maintain attention or concentration, and understand, remember, and carry out detailed instructions. These findings are inconsistent with [Plaintiff's] reported activities of daily living, which includes performance of household chores and independent personal care and travel.
>
> I give great weight to Dr. Ahn's conclusion in December 2012 noting moderate limitations in social functioning and concentration, persistence and pace. These findings are generally consistent with the entirety of the record including the "paragraph B" findings above.

>    I give little weight to the State agency's conclusion in December 2011 that [Plaintiff] has only mild difficulties in social functioning. The evidence of record including [Plaintiff's] testimony supports slightly greater limitation in social functioning.
>
>    I give great weight to the State agency's determination that [Plaintiff] is limited to light work. [Plaintiff's] degenerative disk disease is mild and the State's [RFC] accounts for [Plaintiff's] asthma.
>
>    I give little weight to the opinion of Alisa Ingram, M.D., a family practitioner, who concluded in December 2012 that [Plaintiff] is able to lift no more than 10 pounds and sit or stand one hour. The record reveals only mild degenerative disk disease and few examples of asthma exacerbation.

R. at 94 (footnotes omitted).

### IV

### **Disability Determinations and Burden of Proof**

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made,

the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[6]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to

---

[6] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not

disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

### **Substantial Evidence Standard**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence.  *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law."  *Id.*  The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.  *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  *Hancock*, 667 F.3d at 472.  Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."  *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).  When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ.  *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

# VI

## Discussion

Plaintiff contends that the ALJ erred in his consideration of the opinion evidence. Pl.'s Mem. Supp. Mot. Summ. J. 8-11, ECF No. 21-1. In this regard, the Fourth Circuit reiterated the following standard for considering medical opinions. *Dunn v. Colvin*, 607 F. App'x 264, 267-68 (4th Cir. 2015). When evaluating medical opinions, the ALJ should consider "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654; *see* 20 C.F.R. §§ 404.1527, 416.927. "An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,'" *Dunn*, 607 F. App'x at 267 (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)), "or has failed to give a sufficient reason for the weight afforded a particular opinion," *id.* (citing 20 C.F.R. § 404.1527(d) (1998)); *see* 20 C.F.R. §§ 404.1527(c), 416.927(c).

A treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight when well supported by medically acceptable clinical and laboratory diagnostic techniques and when the opinion is consistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Dunn*, 607 F. App'x at 267. Conversely, however, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."

*Craig*, 76 F.3d at 590. In other words, "a treating physician's opinion is to be accorded comparatively less weight if it is based on the physician's limited knowledge of the applicant's condition or conflicts with the weight of the evidence." *Meyer v. Colvin*, 754 F.3d 251, 256 (4th Cir. 2014) (citing *Craig*, 76 F.3d at 590; 20 C.F.R. § 404.1527(c)). Moreover, "the testimony of a non-examining physician can be relied upon when it is consistent with the record. Furthermore, if the medical expert testimony from examining or treating physicians goes both ways, a determination coming down on the side of the non-examining, non-treating physician should stand." *Smith*, 795 F.2d at 346 (citation omitted). An ALJ may reject a treating physician's opinion in its entirety and afford it no weight if the ALJ gives specific and legitimate reasons for doing so. *See Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 67 (4th Cir. 2014) (per curiam) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001); *Craig*, 76 F.3d at 589-90).

A medical expert's opinion as to whether one is disabled is not dispositive; opinions as to disability are reserved for the ALJ and for the ALJ alone. *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Generally, the more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given. *See id.* §§ 404.1527(c)(3), 416.927(c)(3). Additionally, the more consistent the opinion is with the record as a whole, the more weight the ALJ will give to it. *See id.* §§ 404.1527(c)(4), 416.927(c)(4); *see also Dunn*, 607 F. App'x at 268.

Here, the ALJ gave "little weight" to Dr. Ahn's opinion "noting poor to no ability to deal with the public, deal with work stresses, maintain attention or concentration, and understand, remember, and carry out detailed instructions" because "[t]hese findings are inconsistent with [Plaintiff's] reported activities of daily living, which includes performance of household chores

and independent personal care and travel." R. at 94. Under Social Security Ruling[7] ("SSR") 96-2p, "a finding that a physician's opinion is inconsistent with the other substantial evidence in a claimant's case record is adequate to support a determination that the opinion is not entitled to controlling weight." *Burger v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-1345, 2015 WL 467662, at *3 n.2 (D. Md. Feb. 2, 2015) (citing SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996)). A claimant's daily activities can support the ALJ's discounting of a treating physician's opinion. *Milam v. Colvin*, 794 F.3d 978, 984 (8th Cir. 2015); *see Craig*, 76 F.3d at 590 (determining that treating physician's medical notes and claimant's reported daily living activities were persuasive evidence that contradicted physician's conclusory opinion based on claimant's subjective reports of pain); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600-02 (9th Cir. 1999) (considering inconsistency between treating physician's opinion and claimant's daily activities to be specific and legitimate reason to discount treating physician's opinion); *Chavis v. Apfel*, No. 98-1145, 1998 WL 827322, at *3 (4th Cir. Dec. 1, 1998) (per curiam) (unpublished table decision) ("Here, the ALJ properly discounted the opinions of several of [the claimant's] treating physicians that she was disabled because the opinions were conclusory and inconsistent with various activities that [the claimant] has engaged in over the years.").

The ALJ also gave "little weight" to Dr. Ingram's opinion that Plaintiff could lift no more than ten pounds and could sit or stand for only one hour because "[t]he record reveals only mild

---

[7] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

degenerative disk disease and few examples of asthma exacerbation." R. at 94. The ALJ found that

> [a]n x-ray of the lumbar spine on March 26 [sic], 2011, showed minimal degenerative osteoarthritis at L3, L4, and L4-L5. However, the imaging and the overall record shows [sic] no evidence of spinal stenosis, spondylosis, nerve root impingement, or other seriously debilitating back conditions. [Plaintiff's] symptoms have not warranted back surgery. Additionally, she has conservatively treated back pain with medications such as Flexeril and Trazodone.

R. at 93 (footnote omitted); *see* R. at 444, 635. The ALJ's decision to discount Dr. Ingram's opinion thus was supported by substantial evidence. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (determining that, in discounting claimant's pain testimony, ALJ appropriately considered objective medical findings, including MRI and X-rays showing only mild degenerative disease and no disc herniation or nerve root impingement); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam) (MRI revealing very minimal degenerative disc disease, no bulge or protrusion, and no canal stenosis or nerve root impingement is inconsistent with finding total and permanent disability); *Cook v. Chater*, No. 95-2432, 1997 WL 633262, at *1-2 (4th Cir. Oct. 14, 1997) (per curiam) (unpublished table decision) (treating physician's opinion of claimant's disability based on back pain was not entitled to controlling weight because it was inconsistent with other substantial evidence showing no nerve root impingement or disc disease); *cf. Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (claimant's "pain can be directly attributed to an objective finding—a diagnosis of persistent nerve root irritation and more recently, to a recurrent herniated disc"). Thus, substantial evidence supports the ALJ's affording the opinions of Plaintiff's treating sources less than controlling weight.

Finally, Plaintiff contends that the ALJ failed to consider the factors cited in *Johnson* and in 20 C.F.R. §§ 404.1527(c) and 416.927(c) when not affording a treating source's opinion

controlling weight. Pl.'s Mem. Supp. Mot. Summ. J. 9, ECF No. 21-1. In this case, however, "[w]hile the ALJ did not explicitly analyze each of the *Johnson* factors on the record, the ALJ was clear that he concluded that the [treating sources' opinions were] not consistent with the record or supported by the medical evidence, which are appropriate reasons under *Johnson*" to afford a treating physician's opinion less than controlling weight. *Bishop*, 583 F. App'x at 67.

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards here. Thus, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

## VII

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 22) is **GRANTED**. Plaintiff's Motion for Summary Judgment (ECF No. 21) is **DENIED**. The Commissioner's final decision is **AFFIRMED**. A separate order shall issue.

Date: August 1, 2016                                         /s/
                                                             Thomas M. DiGirolamo
                                                             United States Magistrate Judge